IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DEBORAH D. TATE,

                    Plaintiff,

vs.                                    Case No. 15-4870-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits.  The matter has been fully briefed by the
parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On November 27, 2013, administrative law judge (ALJ) Christine A. Cooke issued her decision (R. at 20-29). Plaintiff alleges that she had been disabled since November 28, 2011 (R. at 20). Plaintiff meets the insured status requirements for social security disability benefits through December 31, 2015

(R. at 22).  At step one, the ALJ found that plaintiff did not
engage in substantial gainful activity since November 28, 2011
(R. at 22).  At step two, the ALJ found that plaintiff had a
severe impairment (R. at 22).  At step three, the ALJ determined
that plaintiff's impairments do not meet or equal a listed
impairment (R. at 22).  After determining plaintiff's RFC (R. at
23), the ALJ found at step four that plaintiff could not perform
past relevant work (R. at 27-28).  At step five, the ALJ found
that plaintiff could perform other jobs that exist in
significant numbers in the national economy (R. at 28-29).
Therefore, the ALJ concluded that plaintiff was not disabled (R.
at 29).

**III.  Did the ALJ in her analysis of plaintiff's daily
activities?**

In her decision, the ALJ stated the following regarding
plaintiff's daily activities:

> In addition, the good level of activities of
> daily living claimant described to Dr.
> Schemmel, including spending her day
> drinking coffee, doing yoga and stretching,
> walking on a treadmill, visiting her mother,
> watching television, taking naps, preparing
> and eating meals, and running errands; and
> the good level of activities of daily living
> described by claimant in a Function Report,
> including preparing simple meals, caring for
> a dog, caring for personal hygiene, doing
> simple housework, driving a car, leaving
> home alone, going shopping, spending time
> with others, and going out to eat,
> demonstrates that **claimant has retained a**

5

> **significant physical and mental capacity**
> (Exhibit 7E, emphasis added).

(R. at 26).  Later, in discounting the opinions of Dr. Hollenbeck, plaintiff's treating physician, the ALJ relied in part on plaintiff's "good level of activities of daily living" (R. at 26).  Finally, the ALJ, in reconciling the contrasting opinions of Dr. Neufeld and Dr. Schemmel regarding plaintiff's mental limitations, and in making her RFC findings, stated that plaintiff had a "nearly normal level of activities of daily living, which strongly suggests that claimant has retained a significant work capacity" (R. at 27).

First, according to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity.  20 C.F.R. § 404.1572(c).  Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.  Krauser v. Astrue, 638 F.3d 1324, 1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping.  The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible.  The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work.**  As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." In other words, evidence of performing general housework does not preclude a finding of disability.  In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries.  We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery shopping, and visiting friends.  We found this to be an unpersuasive reason to deny benefits: **"We have repeatedly held...that 'the ability to do activities such as light**

> **housework and visiting with friends provides
> little or no support for the finding that a
> claimant can perform full-time competitive
> work.**'" Id. (quoting <u>Hogg v. Shalala</u>, 45
> F.3d 276, 278 (8th Cir.1995)). Moreover, we
> have reminded the Commissioner

> > **that to find a claimant has the
> > residual functional capacity to
> > perform a certain type of work,
> > the claimant must have the ability
> > to perform the requisite acts day
> > in and day out, in the sometimes
> > competitive and stressful
> > conditions in which real people
> > work in the real world...The
> > ability to do light housework with
> > assistance, attend church, or
> > visit with friends on the phone
> > does not qualify as the ability to
> > do substantial gainful activity.**

> <u>Thomas v. Sullivan</u>, 876 F.2d 666, 669 (8th
> Cir.1989) (citations omitted).

<u>Draper</u>, 425 F.3d at 1131 (emphasis added).

In <u>Hughes v. Astrue</u>, 705 F.3d 276 (7th Cir. 2013), the court

stated:

> [The ALJ] attached great weight to the
> applicant's ability to do laundry, take
> public transportation, and shop for
> groceries. We have remarked the naiveté of
> the Social Security Administration's
> administrative law judges in equating
> household chores to employment. "The
> critical differences between activities of
> daily living and activities in a full-time
> job are that a person has more flexibility
> in scheduling the former than the latter,
> can get help from other persons (... [her]
> husband and other family members), and is
> not held to a minimum standard of
> performance, as she would be by an employer.
> The failure to recognize these differences

> is a recurrent, and deplorable, feature of
> opinions by administrative law judges in
> social security disability cases [citations
> omitted]."

705 F.3d at 278. Therefore, the fact that plaintiff drinks coffee, takes naps, prepares meals, runs errands, cares for a dog, cares for her personal hygiene, does simple housework, drives a car, shops, and spends time with others do not establish that plaintiff can work at a competitive level over an 8 hour day, or provide a basis for discounting the opinions of Dr. Hollenbeck. There is nothing in her daily activities, as described by the ALJ, that is clearly inconsistent with the opinions offered by Dr. Hollenbeck.[1]

As for watching television, that is hardly inconsistent with plaintiff's allegations of pain and related limitations. See Krauser, 638 F.3d at 1333. Furthermore, the fact that she drinks coffee and takes naps provides absolutely no support for a determination that plaintiff has the RFC to work a full-time job. In fact, plaintiff testified that she gets up in the morning, drinks a cup of coffee, and then goes back to bed and sleeps or rests for 1-2 hours, and then gets up and gets something to eat for lunch (R. at 55). Plaintiff further testified that she takes another 2-3 hour nap in the afternoon (R. at 56).

---

[1] Dr. Hollenbeck opined that plaintiff could only lift 10 pounds, could stand/walk for less than 2 hours in an 8 hour workday, can sit for less than 6 hours in an 8 hour workday, is limited to only occasional postural and manipulative functions, and has some environmental limitations (R. at 429-432).

Furthermore, it is well-settled law that a claimant need not prove she is bedridden or completely helpless to be found disabled. Reed v. Barnhart, 399 F.3d 917, 923 (8th Cir. 2005). One does not need to be utterly or totally incapacitated in order to be disabled. Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Jones v. Sullivan, 804 F. Supp. 1398, 1405 (D. Kan. 1992). The level of plaintiff's daily activity, as described by the ALJ in her decision, is not inconsistent with her allegations of pain and related limitations.

Second, the ALJ mischaracterized plaintiff's daily activities by ignoring the qualifications and limitations she reported. The ALJ states that plaintiff's daily activities demonstrates that "claimant has retained a significant physical and mental capacity" (R. at 26), and has a "nearly normal level of activities of daily living" (R. at 27). However, the ALJ failed to mention most of the qualifications and limitations plaintiff reported. In Exhibit 7E, cited to by the ALJ, plaintiff reported that she is no longer able to exercise regularly, it is hard for plaintiff to put on clothes, or care for her hair or shave because of left side weakness and problems with the use of her hands (R. at 208). In a more recent function report not mentioned by the ALJ (R. at 237-247), plaintiff indicated that she used to be able to clean the house for 4 hours, but she can now only do very light housework while

taking frequent breaks.  She mentioned that she used to spend a lot of time at family functions, but that the talking and concentrating on what people say causes extreme mental fatigue (R. at 245).  In her testimony, plaintiff indicated that she cannot take the noise at her friend's house because of the children, and can only stay about one hour (R. at 56).  She further testified that she wants to be social, but she is now so exhausted from even just spending time sitting on the couch talking (R. at 57).  Her husband does most of the cooking when he is home (R. at 55).

Plaintiff also indicated in the adult function report that she used to read a lot, but reading now causes extreme eye strain or discomfort.  She used to take the dog for long walks, but now she can only walk the dog down the block and right back home.  She can no longer go shopping all day like she used to, she has to reread things more than once to understand them, and it now takes 2 hours to get ready to go somewhere instead of 30 minutes (R. at 245).  Plaintiff stated that she only shops once or twice a week for about 15 minutes to 1 hour, especially if she is by herself (R. at 210, 211, 240).  Plaintiff indicated that she tries to avoid driving when there is a lot of traffic (R. at 51), noting at another point she has recently pulled out in front of moving vehicles (after noting decreased attention

span and poor judgment and memory loss).  She indicated that

driving in traffic causes panic attacks (R. at 246).

The facts of this case, insofar as the ALJ mischaracterized

plaintiff's daily activities, are very similar to those in

Sitsler v. Astrue, 410 Fed. Appx. 112, 117-118 (10th Cir. Jan.

10, 2011):

> Mr. Sitsler also argues the ALJ
> mischaracterized the extent of his daily
> activities, ignoring the qualifications and
> limitations he consistently reported. The
> record reflects that Mr. Sitsler testified
> or otherwise reported that he has help from
> relatives in caring for his children; he
> usually has no energy to do housework; he
> makes only simple meals; he shops for 1-2
> hours at most; he washes dishes for only a
> few minutes; he vacuums only once a week for
> a few minutes; and he does not drive very
> much. In contrast, the ALJ's findings
> regarding Mr. Sitsler's activities included
> none of these limitations. We have
> criticized this form of selective and
> misleading evidentiary review, holding that
> an ALJ cannot use mischaracterizations of a
> claimant's activities to discredit his
> claims of disabling limitations. *See Sisco
> v. U.S. Dep't of Health & Human Servs*., 10
> F.3d 739, 742-43 (10th Cir.1993) (ALJ took
> claimant's testimony out of context,
> selectively acknowledged only parts of her
> statements, and presented his findings as
> accurate reflections of her statements); *see
> also Talbot v. Heckler*, 814 F.2d 1456, 1462,
> 1464 (10th Cir.1987) (ALJ improperly based
> conclusion claimant could do light work on
> mischaracterization of his activities).
>
> Although we will not upset an ALJ's
> credibility determination that is closely
> and affirmatively linked to substantial
> evidence, here the ALJ's analysis was flawed

> both by his reliance on mischaracterizations
> of the evidence and by his failure to
> consider the uncontroverted evidence of
> claimant's prescription pain medications.
> *See Winfrey v. Chater*, 92 F.3d 1017, 1021
> (10th Cir.1996) ( "[T]he ALJ's evaluation of
> plaintiff's subjective complaints was flawed
> by his reliance on factors that were not
> supported by the record and by his failure
> to consider other factors that were
> supported by the record."). Therefore, we
> reverse and remand, directing the ALJ to
> properly evaluate the evidence with respect
> to claimant's credibility.

As was the case in <u>Sitsler</u>, the ALJ mischaracterized the extent of plaintiff's daily activities, ignoring the many qualifications and limitations she consistently reported. Because of the ALJ's erroneous reliance on plaintiff's daily activities, as set forth above, the court finds that the ALJ's credibility findings, the discounting of the opinions of Dr. Hollenbeck because of her "good level" of daily activities, and the reconciling of the opinions of Dr. Neufeld and Dr. Schemmel based on her "nearly normal level of daily activities" are not supported by substantial evidence.

## IV. Did the ALJ err in the weight given to medical source opinions?

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and

never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

As noted above, because of the ALJ's erroneous analysis of plaintiff's daily activities, on remand, the ALJ will need to reconsider the relative weight given to the opinions of Dr. Schemmel and Dr. Neufeld, two consulting medical sources.  The ALJ, in reconciling their statements, had relied on plaintiff's

"nearly normal level of activities of daily living" (R. at 27)
in making her RFC findings.  The ALJ will also need to
reconsider the weight given to the opinions of Dr. Hollenbeck, a
treating physician, in light of the fact that the ALJ discounted
his opinion, in part, because of plaintiff's "good level of
activities of daily living" (R. at 26).

The ALJ, in discussing, the opinions of Dr. Hollenbeck,
discounted his opinions because, in the ALJ's analysis, his
opinions were not supported by the physical examination
findings, and plaintiff's good level of daily activities (R. at
26).  However, it is not clear from the ALJ's decision what
weight she accorded to Dr. Hollenbeck's opinions.  The only
other medical source opinion regarding plaintiff's daily
activities was a non-examining state agency consultant, Dr.
Tawadros, who limited plaintiff to light work.  The ALJ accorded
some weight to her opinion, but the ALJ limited plaintiff to
sedentary work in light of concerns that plaintiff would have
pain and fatigue with repetitive physical activity (R. at 27).

According to SSR 96-8p, the RFC assessment "must include a
narrative discussion describing how the evidence supports each
conclusion, citing specific medical facts...and nonmedical
evidence."  The ALJ must explain how any material
inconsistencies or ambiguities in the evidence in the case
record were considered and resolved.  The RFC assessment must

always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

    In reaching his RFC determination, an ALJ is permitted, and indeed required, to rely on all of the record evidence, including but not limited to medical opinions in the file. Wells v. Colvin, 727 F.3d 1061, 1071 (10th Cir. 2013).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence.  Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th

Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p
because he has not linked his RFC determination with specific
evidence in the record, the court cannot adequately assess
whether relevant evidence supports the ALJ's RFC determination.
Such bare conclusions are beyond meaningful judicial review.
Brown v. Commissioner of the Social Security Administration, 245
F. Supp.2d 1175, 1187 (D. Kan. 2003).

     The problem in this case is that it is not clear from the
ALJ's decision why the ALJ accorded greater weight to certain
portions of Dr. Hollenbeck's opinions, but not others.  For
example, Dr. Hollenbeck limited plaintiff to only an occasional
ability to climb, balance, kneel, crouch, crawl and stoop (R. at
430).  Dr. Tawadros found that plaintiff had no postural
limitations except for a finding that plaintiff could never
climb ladders, ropes and scaffolds (R. at 92).  The ALJ found
that plaintiff could never climb ladders, ropes or scaffolds,
but further found that plaintiff can only occasionally climb
stairs or ramps, and can only occasionally stoop, kneel, crouch
and crawl (R. at 23).  Thus, in terms of postural limitations,
the ALJ's RFC findings closely correlate with the opinions of
Dr. Hollenbeck.

     In environmental limitations, Dr. Hollenbeck opined that
plaintiff should be limited in her exposure to temperature
extremes, dust, vibration, humidity/wetness, hazards, and fumes,

odors, chemicals and gases (R. at 432).  Dr. Tawadros opined

that plaintiff should avoid concentrated exposure to extreme

heat (but not extreme cold), and avoid concentrated exposure to

vibration, fumes, odors, dusts, gases, poor ventilation and

hazards.  Dr. Tawadros found that plaintiff had no limitations

with regards to exposure to wetness or humidity (R. at 92-93).

The ALJ found that plaintiff should avoid exposure to extreme

cold and heat, and never be exposed to wetness, humidity, fumes,

odors or dust, and requires an indoor environment.  The ALJ also

indicated that plaintiff should avoid hazards (R. at 23).  Thus,

in regards to environmental limitations, the ALJ's findings more

closely correlate with the opinions of Dr. Hollenbeck.

Regarding manipulative limitations, Dr. Hollenbeck opined

that plaintiff was limited to only occasional reaching,

handling, fingering, and feeling due to paresthesias, weakness

and pain, and further noting "severe fatigue and increased

weakness with any repetitive activity" (R. at 431); Dr. Tawadros

found that plaintiff had no manipulative limitations (R. at 92).

The ALJ likewise found no manipulative limitations (R. at 23),

even though the ALJ later stated that plaintiff was limited to

sedentary work because of concerns that she would have "pain and

fatigue with repetitive physical activity" (R. at 27).  This is

similar to the language used by Dr. Hollenbeck to support his

finding that plaintiff had manipulative limitations.  It is not

at all clear why the ALJ gave greater weight to the opinions of
Dr. Hollenbeck regarding plaintiff's postural and environmental
limitations, but then gave no weight to his manipulative
limitations.  The ALJ offered no explanation for rejecting Dr.
Hollenbeck's manipulative limitations.  As SSR 96-8p states,
when an RFC assessment conflicts with an opinion from a medical
source, the ALJ must explain why the opinion was not adopted.
On remand, the ALJ must comply with the requirements of SSR 96-
8p.

These manipulative limitations are clearly relevant because
the ALJ found that plaintiff could perform three sedentary jobs,
document scanner, circuit board assembler and packager (R. at
28-29).  All three jobs require that plaintiff be able to
frequently, reach, handle and finger.  DICOT 249.587-018, 1991
WLL 672349; DICOT 726.684-110, 1991 WL 679616; DICOT 559.687-
014, 1991 WL 683782.

**V.  Did the ALJ err by failing to elicit a reasonable
explanation from the vocational expert (VE) for discrepancies
with the testimony of the VE and the Dictionary of Occupational
Titles (DOT)?**

In her RFC findings, the ALJ stated that plaintiff should
"never" be expected to understand, remember, or carry out
detailed instructions.  However, all 3 jobs identified by the VE
and adopted by the ALJ in her decision are jobs that require a

19

reasoning level of 2 or 3.  A reasoning level of 2 requires the ability to "apply commonsense understanding to **carry out detailed but uninvolved written or oral instructions**."  1991 WL 672349, 1991 WL 679616, 1991 WL 683782 (emphasis added).  Here, a conflict exists between the RFC finding that plaintiff should never be expected to understand, remember or carry out detailed instructions, and the DOT indication that all 3 jobs require the ability to carry out detailed instructions.

In the case of Hackett v. Barnhart, 395 F.3d 1168, 1175 (10th Cir. 2005), the court cited to Haddock and SSR 00-4p, and found that there was no indication in the record that the VE expressly acknowledged a conflict with the DOT or that he offered an explanation for the conflict.  An ALJ must inquire about and resolve any conflicts between the VE testimony and the description of that job in the DOT.  Poppa v. Astrue, 569 F.3d 1167, 1173 (10th Cir. 2009).  In two cases with facts identical to those before this court, MacDonald v. Colvin, 2015 WL 4429206 at *8 (D. Kan. July 20, 2015), and Crabtree v. Colvin, Case No. 14-2506-SAC (D. Kan. Dec. 28, 2015), the court held that such a conflict must be explained.  On remand, if such a conflict arises, it must be addressed by the ALJ.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four

of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 7th day of September 2016, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge